UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BOBBIJO COSME,

                              Plaintiff,

v.                                                          5:13-CV-00933

                                                            (GTS/TWD)

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York, 13202

HON. RICHARD S. HARTUNIAN                   KAREN CALLAHAN, ESQ.
United States Attorney for the              Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                   STEPHEN P. CONTE, ESQ.
Social Security Administration              Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned for report and recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently 41 years old. (Administrative Transcript "T." at 43.) The highest grade she completed in school was seventh grade, but she earned her GED. (T. at 46, 58.) She has two children, and has only been self-employed intermittently providing daycare to children and assisting an elderly woman. (T. at 46-49.) Plaintiff alleges disability due to chronic back pain, depression, insomnia, and obsessive-compulsive disorder. (T. at 22, 237, 265.)

At age 33, Plaintiff applied for disability insurance benefits and SSI on September 15, 2006. (T. at 22, 237.) The application was initially denied on January 24, 2007. (T. at 115.) On July 9, 2009, after a hearing, Administrative Law Judge ("ALJ") Robert E. Gale denied the application. (T. at 107.) On August 15, 2011, the Appeals Council remanded the case for further administrative proceedings. (T. at 111-14.) On July 12, 2012, after another hearing, ALJ Gale again denied Plaintiff's application. (T. at 20-32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 4, 2013. (T. at 1-6.) Plaintiff commenced this action on August 6, 2013. (Dkt. No. 1.)

## II.      APPLICABLE LAW

### A.      Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2012)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant

survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working.  *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[1] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found that Plaintiff was not disabled at step five of the five-step analysis. (T. at 30-32.) The ALJ found that Plaintiff's severe impairments included: (1) chronic back pain;

---

[1]    On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

(2) fibromyalgia; (3) chronic obstructive pulmonary disease ("COPD"); (4) depressive disorder -

NOS; (5) post-traumatic stress disorder; and (6) borderline intellectual functioning.  (T. at 22-

24.)  The ALJ further found that none of the impairments met or equaled the severity of a listed

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 24-26.)

The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC") to

lift and/or carry twenty pounds occasionally and 10 pounds frequently, stand and/or walk for six

hours per day, and sit for six hours per day.  (T. at 27.)  The ALJ also found that Plaintiff needed

to avoid concentrated exposure to respiratory irritants and he outlined some specific mental

abilities of Plaintiff.  *Id*.  The ALJ found Plaintiff capable of light work in the national economy

at step five.  (T. at 31.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ's determination of Plaintiff's RFC was not supported by

substantial evidence because the ALJ erred in failing to properly evaluate the opinions of Jeanne

Shapiro, Ph.D. and State Agency file examiner Dr. Z. Mata, Psychiatry, and in failing to

"reconcile" the opinion of Christina Caldwell, Psy.D.   (Dkt. No. 13 at 11- 18.[2])  Plaintiff also

contends that the ALJ erred in assessing the Plaintiff's credibility and in applying the Medical-

Vocational Guidelines although Plaintiff had significant nonexertional limitations.  *Id.* at 18-21.

Defendant contends that the ALJ's decision applied the correct legal standards and is

supported by substantial evidence and thus should be affirmed.  (Dkt. No. 18.)

---

[2]      Citations to page numbers in the parties' briefs reference the actual page number in the brief, not the page number assigned by the Court's electronic filing system.

## V.    DISCUSSION

### A.    Opinion Evidence and the RFC Determination

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2014).  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule.  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. 404.1546(c) (2014).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  20 C.F.R. § 404.1545(a) (2014).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. §§ 404.1569a(a), 404.1569a(b), and 416.969a(a) (2014).  Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*.

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Plaintiff argues that the ALJ improperly dealt with medical opinions provided by consultants Drs. Shapiro and Caldwell, and State Agency examiner, Dr. Mata, concerning Plaintiff's mental abilities and, as such, the RFC was not properly supported by substantial evidence. (Dkt. No. 13 at 11.) As discussed in more detail below, I find that the ALJ did properly analyze these opinions since the evidence upon which the ALJ relied in assigning weight to each opinion was substantial and supported by the record.

The ALJ gave "very little weight" to the opinion of Dr. Shapiro because the opinion is "not consistent with the longitudinal medical evidence of record" and "not consistent with her own clinical findings." (T. at 30.) Plaintiff asserts that Dr. Shapiro's opinion should have been accorded greater weight because it is consistent with the record and her own findings on examination. (Dkt. No. 13 at 13.) Defendant Commissioner argues that the weight the ALJ assigned to Dr. Shapiro's opinion was supported by the record. (Dkt. No. 18 at 7.) The Court agrees with the Commissioner.

Dr. Shapiro, in a report dated November 9, 2006, opined that Plaintiff:

> *may* have difficulty *at times* adequately understanding and

> following some instructions and directions as well as completing
> some tasks due to bipolar disorder. She *may* have difficulty
> interacting appropriately with others due to irritability and anger.
> Attending work or maintaining a schedule would be difficult due to
> lack of motivation and lethargy. She does not appropriately
> manage stress.

(T. at 444 (emphasis supplied).) However, Dr. Shapiro's findings on examination do not fully

support this somewhat ambiguous conclusion. Plaintiff's demeanor was responsive and

cooperative; her manner, social skills, and overall presentation were adequate. (T. at 443.) Her

appearance, grooming, and posture were normal, although she was restless. *Id.* Eye contact was

appropriate; her expressive and receptive language was appropriate; and her thought processes

were coherent and goal directed. *Id.* While she was anxious and tense, her affect was consistent

with her thoughts and speech and of full range. *Id.* Her attention, concentration, and recent and

remote memory skills were intact but would decline *if* she were to have a depressive or manic

episode. *Id.* (emphasis supplied). Her cognitive functioning was average and her insight and

judgment were fair. *Id.* at 444.

Notably, the administrative record is devoid of treatment records from any specific

mental health provider or counselor for the Plaintiff. She did treat with her family physician, Dr.

Kristen Graves, at Syracuse Community Health Center for a variety of problems, both physical

and mental, including depression and bi-polar disorder between 2003 and 2011. (T. at 420-425,

517-527, 546-558.) Dr. Graves prescribed medications for those conditions and noted Plaintiff

was generally better on the medications. (T. at 519, 556.) Dr. Graves even assessed her as doing

"fairly well" without medication. (T. at 558.) At times, Dr. Graves also assessed Plaintiff with a

seasonal decrease in her mood; at other times, Plaintiff's mood was "okay" and "stable." (T. at

517, 522, 546, 556.)  On February 20, 2008, Dr. Graves indicated that Plaintiff had difficulty quitting smoking because she has "a lot of stress," but that she "stopped losing her temper as much with her teenaged kids" and that her bi-polar "symptomatology" was improved although she had a "flat affect."  (T. at 519, 520.)  On September 15, 2011, Dr. Graves noted Plaintiff had anxiety, but that she was well appearing and in no acute distress.  (T. at 546.)

Dr. Graves never provided a function by function assessment of the Plaintiff's abilities although ALJ Gale requested such an assessment from her.  (T. at 534-44, 564-74.)  Dr. Graves provided a letter which set forth that Plaintiff had "[p]roblems with depression and anxiety, which *can* impact on her energy, attention, and concentration levels."  (T. at 706 (emphasis supplied).)  Dr. Graves indicated that in the five years she treated Plaintiff, the Plaintiff "[h]as never been at a point physically or emotionally where she could perform work on a consistent basis."  *Id.*  The ALJ gave Dr. Graves' letter "reduced weight" because it was not a function-by-function assessment, but he did incorporate Dr. Graves' opinions by limiting Plaintiff's RFC to a light exertional level with respiratory limitations.  (T. at 30.)

Plaintiff's testimony confirms she did not receive regular mental health care.  At a hearing on March 12, 2009, Plaintiff testified that she had never been hospitalized for mental health problems, and was not in counseling at the time of the hearing.  (T. at 52.)  She had received family counseling in the summer of 2008 for which "[t]he whole purpose was mostly for my nephew to benefit from it, and he has behavior problems . . . ."  *Id.*  At another hearing on May 18, 2012, she testified that she was not receiving regular mental health care, and that the last time she had received regular mental health care was "about five, six years ago."  (T. at 78.)

Plaintiff's activities of daily living also show she is able to mentally function at a

10

higher level than what Dr. Shapiro expressed in her somewhat indeterminate opinion. Plaintiff cares for her two children and her nephew, and for a time had three other children in the household. (T. at 46, 73-74.) She prepares meals for her children and nephew, helps with their homework, and does simple household chores. (T. at 54-55, 275.) She takes the children to the park when she is able to. (T. at 275.) She dresses herself and takes care of personal hygiene, although she has difficulty putting on socks and shaving because she has to bend. (T. at 275-76.) While she avoids social situations, she occasionally goes fishing and camping but not as often because of physical pain. (T. at 278, 551.) She apparently also went motorcycling because she burned her leg "[g]etting onto a motorcycle." (T. at 609.)

The record also shows that Dr. Shapiro's opinion is inconsistent with the findings and opinion of State Agency examiner Dr. Mata who found Plaintiff to have mild restrictions with activities of daily living, and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. (T. at 460.) Dr. Mata also found that Plaintiff was "able to understand, execute and remember simple instructions and work-like procedures." (T. at 472.) She was able to sustain a normal workday and work week and maintain her attention and concentration for at least two hour intervals; she could maintain a consistent pace; she was able to adapt to changes in a routine setting and use judgement to make simple work-related decisions. *Id.* Although Dr. Mata indicated Plaintiff *may* have difficulty responding to supervisors and coworkers and working with the public, he found she could perform unskilled work with simple tasks. *Id.* (emphasis supplied).

ALJ Gale gave "reduced weight" to Dr. Mata's opinion because Dr. Mata never examined Plaintiff, and his moderate limitations were not consistent with the medical evidence including

Plaintiff's activities of daily living, lack of mental health treatment, and lack of mental status examination clinical findings. (T. at 30.) Plaintiff argues that it was improper for the ALJ to give reduced weight to Dr. Mata's opinion. (Dkt. No. 13 at 14-16.) However, at the conclusion of Dr. Mata's mental RFC assessment, he found, as noted above, that Plaintiff could perform unskilled work with simple tasks. (T. at 472.) It is correct that Dr. Mata found Plaintiff had some moderate limitations, however, in reaching his mental RFC assessment conclusion, Dr. Mata found Plaintiff not significantly limited in a number of categories. These include her ability to remember locations and work procedures, and understand, remember and carry out short and simple instructions. (T. at 470.) He found Plaintiff was not significantly limited in her ability to maintain a schedule and attendance, maintain a routine without special supervision, complete a normal work week without interruptions from psychologically based symptoms, and perform at a consistent pace. (T. at 471.) Plaintiff was not limited in her ability to ask simple questions, request assistance, respond appropriately to changes in the work setting, and use public transportation. *Id.* While the ALJ gave reduced weight to Dr. Mata's opinion, the Court finds that the ALJ's determination of Plaintiff's RFC is nevertheless consistent with Dr. Mata's opinion that Plaintiff could perform unskilled work with simple tasks.

Dr. Shapiro's opinion and the moderate findings of Dr. Mata are also inconsistent with the examination and findings of Dr. Caldwell who saw Plaintiff consultatively on November 23, 2011. (T. at 575.) At that time, Plaintiff was cooperative and "her manner of relating, social skills, and overall presentation was adequate." (T. at 576.) She was well groomed and eye contact was normal. *Id.* Although her speech was mumbled, her expressive and receptive language was appropriate and her thought processes were coherent and goal directed. *Id.* She

was anxious and irritable, but her attention and concentration were intact, as were her recent and remote memory skills. (T. at 576-77.) She could take care of personal hygiene and grooming, cook and prepare foods, manage her finances and take public transportation. (T. at 577.) She reportedly did not have any friends at the time of the examination, but Plaintiff had good family relationships and interests including reading and watching television. *Id.* Dr. Caldwell did note that Plaintiff was "limited in her ability to relate adequately with others and appropriately deal with stress." *Id.* However, in setting forth the extent to which Plaintiff was limited in these activities, Dr. Caldwell found the limitations to be "mild" concerning Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers; and Plaintiff was found to have mild limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. at 584.) A "mild" limitation is defined as "a slight limitation in this area, but the individual can generally function well." (T. at 584.)

The ALJ gave "great weight" to the opinion of Dr. Caldwell, which the Court finds appropriately explained by the ALJ and well supported by Dr. Caldwell's examination of the Plaintiff and the records as a whole as set forth above. Therefore, the Court finds correct legal standards were applied by the ALJ in assigning weight to the medical opinions of Drs. Caldwell, Shapiro, Graves, and Mata in determining Plaintiff's RFC. The Court also finds the weight the ALJ assigned to the opinions is supported by substantial evidence.

**B.      Credibility Evidence and the RFC Determination**

The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health*

*& Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted).

In making a credibility determination, the hearing officer is required to take the claimant's

reports of pain and other limitations into account. To satisfy the substantial evidence rule, the

ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the

record. 20 C.F.R. § 404.1529 (2012); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); SSR 96-

7p, 1996 WL 374186, at *5 (S.S.A. 1996). The ALJ is required to consider all of the evidence of

record in making his credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§

404.1529, 404.1545(a)(3)). First, the ALJ must consider whether there is an underlying

medically determinable physical or mental impairment(s) that could reasonably be expected to

produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a

determination as to the intensity, persistence, or functionally limiting effects of the claimant's

pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to

produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic

work activities. An individual's statements about his pain are not enough by themselves to

establish the existence of a physical or mental impairment, or to establish that the individual is

disabled. *Id.* Here, the ALJ determined that Plaintiff's medically determined impairments could

reasonably be expected to cause the symptoms alleged by Plaintiff. (T. at 28.)

Once an underlying physical or mental impairment that could reasonably be expected to

produce the claimant's pain or other symptoms has been established, the second step of the

analysis is for the ALJ to the consider extent to which the claimant's symptoms can reasonably

be accepted as consistent with other objective medical evidence and other evidence. *Genier,* 606

F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's

subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3)

(2012).

Here, Plaintiff argues that the ALJ erred in considering these factors because the ALJ

discounted Plaintiff's testimony that she had difficulty interacting and relating to others and

because the ALJ noted Plaintiff's "[p]oor work history demonstrates a weak attachment to the

work force, which detracts from her credibility regarding motivation to work."  (T. at 28; Dkt.

No. 13 at 19.)  The Defendant Commissioner argues that the ALJ correctly determined Plaintiff's

credibility.  (Dkt. No. 18 at 10.)  The Court agrees with the Defendant.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but

must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435 (JSR)(SEG), 1999 WL 185253, at

*5, 1999 U.S. Dist. LEXIS 4085, at * 15 (S.D.N.Y. Mar. 25, 1999) (citations omitted)).  "A

finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit

intelligible plenary review of the record."  *Williams ex rel Williams*, 859 F.2d at 260-61 (citation

omitted) (finding that failure to make credibility findings regarding claimant's critical testimony

undermines the Secretary's argument that there is substantial evidence adequate to support his

conclusion that claimant is not disabled).  "Further, whatever findings the ALJ makes must be

consistent with the medical and other evidence."  *Id*. at 261 (citation omitted) ("[A]n ALJ must

assess subjective evidence in light of objective medical facts and diagnoses.").

The ALJ found Plaintiff "not fully credible" meaning "[t]hat the claimant has failed to

produce appropriate, probative evidence . . . to substantiate her subjective allegations of disabling [mental and physical] symptoms." (T. at 28.) In making that determination, the ALJ considered Plaintiff's mild restrictions in her activities of daily living. The record shows Plaintiff reported that she could dress, bathe, and groom herself; and she could cook and prepare simple food. (T. at 444, 581.) She told one examiner that she could do limited general cleaning, laundry, shopping, and driving. (T. at 444.) She told another examiner she could not do those things. (T. at 581.) She told one examiner she could drive, does not take public transportation, and finds it difficult to manage money. (T. at 444.) She told another examiner that she was too anxious to drive, but can take public transportation, and manage her finances. (T. at 581.) She testified that she prepares meals for her children, and she assists them with their homework. (T. at 55, 74.)

Plaintiff's MRIs and nerve conduction studies were normal. (T. at 360-64, 481-83, 501-06.) Consultative examiner Dr. Ganesh found that Plaintiff did not have any physical functional limitations. (T. at 448, 589.) She originally told Dr. Ganesh she stopped working to be a stay at home mother; a few years later she told him she stopped working because her elderly client passed away. (T. at 446, 587.) She did not receive treatment from any mental health professionals, although she did receive anxiety medication from her family treatment provider, Dr. Graves. (T. at 52, 421, 517-25, 546-58.) However, she did not consistently take the medication prescribed. (T. at 525, 552, 558.)

Plaintiff argues that the ALJ erred in finding her not credible because he "[d]iscounted Plaintiff's testimony that she has difficulty interacting and relating to others on the basis that during medical examinations she interacted appropriately with doctors." (Dkt. No. 13 at 19; T. at 28.) Plaintiff did testify she had some anxiety when in crowds, and some social anxiety. (T. at

45, 50.)  However, "even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence."  *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *see also Murphy v. Barnhart*, Civ. No. 00-9621 (JSR)(FM), 2003 WL 470572, at *10, 2003 U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718 (MBM), 1998 WL 430547, at * 3, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").  Here, Dr. Mata opined that Plaintiff was not significantly limited in the majority of mental work-related functions and that she could perform unskilled work with simple tasks.  (T. at 470-72.)  Dr. Caldwell found she was only mildly limited in her ability to interact appropriately with the public, supervisors, and co-workers.  (T. at 585.)

Plaintiff also takes issue with the ALJ's credibility assessment because the ALJ noted her "poor work history" as it relates to her motivation to work.  (Dkt. No. 13 at 19.)  However, work history is a factor to be considered in weighing the credibility of a claimant.  *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *see also* 20 C.F.R. §416.929(c)(3).

Accordingly, the Court finds that the ALJ did not err in his assessment of Plaintiff's credibility.  The determination of her RFC is based upon proper legal standards and is supported by substantial evidence.

### C.    Step Five Determination and the Application of the Guidelines

Plaintiff lastly argues that the ALJ erred in applying the Medical-Vocational Guidelines at step five of the sequential evaluation process because Plaintiff had significant nonexertional impairments requiring the determination to be based upon a vocational expert opinion.  (Dkt. No. 13 at 19-21.)  Defendant Commissioner asserts that ALJ appropriately relied on the application of the Medical-Vocational Guidelines at step five.  (Dkt. No. 18 at 12-14.)  The Defendant is correct.

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines (the "grids").  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)).  The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience.  *Id*.  "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy."  *Id*.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c) (2014).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country.  20 C.F.R. §§ 404.1566(a), 416.966(a).  In making this determination, the ALJ may apply the grids or consult a vocational expert.  *See Rosa*, 168 F.3d at 78; 20 C.F.R. pt. 404, subpt. P, App. 2.  If the claimant's characteristics match

the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp*, 802 F.2d at 605). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given her functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist LEXIS 5125, at * 18 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411). An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Nonetheless, the existence of nonexertional limitations does not automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert. *Zabala*, 595 F.3d at 411. Where

the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible. *Id*.

Here, the ALJ did ask a vocational expert whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and residual functional capacity that incorporated Dr. Mata's moderate limitations. (T. at 81-83.) The vocational expert testified that given those factors, work would not be available in the national economy. (T. at 83.) However, the ALJ noted, and as the Court has found above, that Dr. Mata's moderate limitations were not consistent with the overall medical evidence in the record. (T. at 31.) The ALJ then determined, based upon the evidence of record including Dr. Caldwell's opinion, that Plaintiff's nonexertional limitations did not significantly limit her performance of the basic mental demands of work including the ability to understand, carry out, and remember simple instructions, respond appropriately to supervision, co-workers, and usual work situations, and deal with routine changes in the work place. (T. at 32.) Therefore, he found her "not disabled" under the Medical-Vocational Guidelines. *Id.*

As determined above, the ALJ's RFC finding was supported by substantial evidence and based upon correct legal principals. Plaintiff's nonexertional limitations set forth in the RFC were that she needed to avoid concentrated exposure to pulmonary irritants; she was able to understand, carry out, and remember simple instructions on a sustained basis; she could frequently respond appropriately to supervision, co-workers, and usual work situations; and she could frequently deal with changes in a routine work setting. (T. at 27.)

In discussing Plaintiff's pulmonary limitations, the ALJ noted that the impact on the broad world of work where a person has a medical restriction to avoid excessive amounts of dust

is minimal because most job environments do not involve great amounts of dust. SSR 85-15, 1985 WL 56857, at *8 (S.S.A. 1985).

With regard to mental demands of work, the relevant rule provides that "the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* at *4. In citing this ruling, the ALJ properly found, based upon substantial evidence of record, that Plaintiff's nonexertional mental limitations were not significant because he found the Plaintiff's limitations matched the rule's parameters. (T. at 32.)

Therefore, substantial evidence supports ALJ Gale's finding that Plaintiff's nonexertional impairments do not significantly reduce her occupational base, and his reliance on the grids to provide the framework for determining that her mental and pulmonary impairments were not disabling was correct. Under these circumstances, testimony of a vocational expert or other similar evidence regarding the existence of jobs Plaintiff can perform in the economy is unnecessary. The ALJ also correctly considered the Plaintiff's age, education, work experience, and RFC and concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T. at 31-32.) As such, the ALJ's decision was based upon correct legal standards and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act. 20 C.F.R. § 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <ins>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</ins>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 11, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge